**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
NITESH AHLUWALIA,

                   Plaintiff,

         -against-

ST. GEORGE'S UNIVERSITY, LLC,
UNIVERSITY SUPPORT SERVICES, LLC,
DANIELLE ROSEN, and DOES I-XX,

                 Defendants.
-------------------------------------------------------X

**FILED**
**CLERK**
11/25/2014 2:39 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**MEMORANDUM OF**
**DECISION AND ORDER**
14-cv-3312 (ADS)(GRB)

**APPEARANCES:**

**The Bach Law Firm, LLC**
*Attorneys for the Plaintiff*
6053 South Fort Apache Road
Suite 130
Las Vegas, NV 89148
    By: Jason J. Bach, Esq., Of Counsel

**Proskauer Rose, LLP**
*Attorneys for the Defendants St. George's University, LLC and University Support Services, LLC*
Eleven Times Square
New York, NY 10036
    By: Charles S. Sims, Esq., Of Counsel

**Fumuso, Kelly, DeVerna, Snyder, Swart & Farrell LLP**
*Attorneys for the Defendant Danielle Rosen*
110 Marcus Boulevard
Hauppauge, NY 11788
    By: Catherine A. Brennan, Esq., Of Counsel

**NO APPEARANCES:**

*Does I-XX*

**SPATT, District Judge**.

      On July 2, 2013, the Plaintiff Nitesh Ahluwalia (the "Plaintiff"),  a citizen and resident of

Canada, commenced a diversity action, under docket no. 13-cv-3753, against the Defendants St.

George's University, LTD. ("SGU Ltd."), a Grenadian entity that owns and operates the medical school located in Grenada in which the Plaintiff was formerly enrolled; St. George's University, LLC ("SGU, LLC"), University Support Services, LLC ("USS"); Danielle Rosen ("Rosen"); and related parties.  The Plaintiff brought claims alleging (1) breach of contract; (2) negligent hiring, training and supervision; (3) intentional infliction of emotional distress; (4) defamation, libel and slander; and (5) intentional interference with contractual relations and prospective advantage. He sought compensatory and punitive damages, attorney's fees and costs; and injunctive relief.

On April 17, 2014, this Court dismissed that action "without prejudice for lack of subject matter jurisdiction," reasoning that "because there are foreign parties on both sides of this case, diversity is absent and the Court may not exercise subject matter jurisdiction over the lawsuit." Ahluwalia v. St. George's Univ., Ltd., No. 13-CV-3735 (ADS)(GRB), 2014 WL 1572269, at *2 (E.D.N.Y. Apr. 17, 2014)(Spatt, J.).

On May 29, 2014, the Plaintiff brought this action SGU, LLC; USS; Rosen; and Does I-XX, removing as defendants all Grenadian entities and individual employees of SGU Ltd.  The Plaintiff also removed the claims for intentional infliction of emotional distress and for defamation, libel, and slander.  The new complaint adds, as against Rosen, a claim of fraud.

On July 31, 2014, SGU, LLC and USS (the "St. George Defendants"), both Delaware entities, moved pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6) to dismiss the complaint as against them for failure to state a cause of action upon which relief can be granted and, alternatively, on the basis of *forum non conveniens*.

On August 28, 2014, Rosen moved pursuant to Fed. R. Civ. P. 12(b)(5) and 12(b)(6) to dismiss the complaint as against her for insufficient service of process and failure to state a claim upon which relief can be granted.

# I. BACKGROUND

Unless stated otherwise, the following facts are drawn from the complaint and construed in a light most favorable to the non-moving party, the Plaintiff.

A.  The Parties and the Defendants' Connections to New York

The Plaintiff was at all relevant times a student in St. George's University School of Medicine (the "medical school").

Rosen is a resident of New York and was at all relevant times a student in the medical school.

SGU, LLC allegedly "wholly owns" the medical school, and USS allegedly acts as an "agent for both." (Compl., at ¶ 10.)

In particular, the medical school has at relevant times maintained an office, operated by USS, in Great River, New York.  This office "accepts applications for admission, student forms, requests for program information and monetary donations for the School of Medicine according to the St. George's University website." (Id. at ¶ 4.)

USS also "engages in student recruitment, advertising, and the creation of website content for St. George's University School of Medicine." (Id. at ¶ 5.)

 The Great River address is listed on the medical school website; is listed as the address for the Office of Admissions; and is the sole United States contact location for the Office of Enrollment Planning and Office of the Registrar.

The New York office allegedly employs at least one associate dean and at least one admissions counselor.

According to the website, the medical school instructed students in temporary classes at the Brooklyn campus of Long Island University in 1983 and 1984.  Also, according to the

website, the medical school has been approved by the New York State Education Department since 1987 for the purpose of conducting clinical training programs in the State of New York.

The complaint further alleges that, according to the website, the medical school currently works with clinical centers throughout New York that provide rotations for 80 to 100 medical students at a time.

Finally, according to the website, the medical school is a participant in the William D. Ford Federal Direct Loan Program through which student borrowers receive funding for their federal student loans directly from the United States Department of Education.

B.  The Underlying Incident

In August 2011, the Plaintiff, a graduate of St. George's University Public Health Master's Program, began attending the medical school.

During his time at the medical school, the Plaintiff allegedly "always remained in good academic and non-academic standing." (Id. at ¶ 17.)

On the night of January 6, 2012, the Plaintiff went with several classmates, including Rosen, to an establishment near the medical school called "Bananas Bar and Restaurant."  The Plaintiff alleges that, in the early morning hours of January 7, 2012,

> an inebriated Rosen approached Plaintiff at Bananas and requested that he sleep over at her apartment that night.  Plaintiff declined.  Rosen persisted in her requests but Plaintiff declined each time.
>
> About an hour later, Plaintiff and Rosen took a taxi back to their apartment complex together as they lived in the apartment complex a few doors down from each other.  This entire incident is captured on surveillance video. As Plaintiff walked in front of Rosen toward his apartment intent on returning home without her, Rosen affectionately pulled Plaintiff with both hands from behind at waist level toward her apartment. Plaintiff walked away from her grip and continued toward his own apartment. At that point, Rosen amicably jumped on Plaintiff's back apparently continuing her flirtatious behavior toward Plaintiff. Plaintiff and Rosen arrived at

4

Plaintiff's door when Plaintiff realized he did not have his keys. Rosen attempted to help Plaintiff get into his apartment and displayed affection toward Plaintiff again by hugging him while they were standing outside Plaintiff's door.

Plaintiff and Rosen then separated. Plaintiff headed back toward the main road near the apartment to wait for his brother to arrive and let him back in to his apartment. At the same time, Rosen walked alone back toward her apartment where she was seen on the surveillance footage stumbling due to extreme intoxication and falling hard into a wall. She then continued back to her apartment now holding the arm she slammed into the wall as if in pain as she walked.

(Id. at ¶¶ 18-20.)

C. The Medical School's Response

Later that day, on January 7, 2012, Rosen allegedly made a "false report" to the landlord of the apartment complex where she and the Plaintiff lived and then to the medical school, accusing the Plaintiff of assault. The Plaintiff maintains that the bruising on her arm that Rosen claimed was caused by Plaintiff attacking her actually corresponds to the video footage showing her fall into the wall and then walking back to her apartment holding her arm in pain. (Id. at ¶ 21.) The Plaintiff also disputes other aspects of Rosen's version of the events.

On January 19, 2012, the Plaintiff received a notice of violation from non-party, C.V. Rao, the Dean of Students of the medical school. This notice stated that the Plaintiff "may be in violation of the University Code of Conduct as outlined in the Student Manual 2011-2012," "specifically, by assaulting Danielle Rosen outside the Salim Apartments on Saturday 7th January, 2012." (Id. at ¶ 22.)(quotation marks omitted).

On January 23, 2012, the Plaintiff received a notice of a formal hearing to take place on January 25, 2012, where he was to appear before a Faculty Judiciary Board. The medical school's Judicial Process Manual provides: "Disciplinary cases in which the

facts are in dispute or which require investigation may be referred, at the discretion of the Board, to a subcommittee of the Judiciary Board which may act as a fact finder." (Id.) However, the Plaintiff alleges that he "was not allowed the opportunity to discuss Rosen's personal vendetta against him, or the opportunity to ask that the board hear from witnesses on this topic." (Id.) The Plaintiff also finds fault with other aspects of the hearing.

Following the hearing, James Robinson ("Robinson"), the Assistant Dean of Students, determined that the Defendant was guilty of assault.

On February 3, 2012, the Plaintiff was verbally informed by Robinson and Dr. Kirkby, the Associate Dean of Students, that the Judiciary Board had decided to dismiss him from the medical school. However, they allegedly informed the Plaintiff that he "would not be dismissed until he accepted the dismissal, or after the appeal process was over, thus allowing him to continue attending lecture, lab, and studying for exams." (Id. at ¶ 27.)

On February 8, 2012, Robinson "offered Plaintiff to leave the school voluntarily and waive his appeal rights in exchange for a clean academic record. Plaintiff refused as he was completely innocent of the allegations against him." (Id.)

On February 22, 2012, the Plaintiff formally appealed his dismissal to the Dean of the medical school, citing new security video tape evidence not available at the time of the hearing which he contended corroborated his version of events.

On March 12, 2012, the Plaintiff was denied access to his mid-term examination, even though the appeal process had begun on February 22, 2012.

On April 12, 2012, the Plaintiff received a letter from Dr. Rao informing him that the dismissal would not be overturned. According to the Plaintiff, this "arbitrary decision" was purportedly based on, among other reasons, the poor quality of the video tape evidence. (Id.).

The Plaintiff alleges that "the appeal proceedings were originally confirmed to be administered by Defendants' office in New York, however, the letter states that it was administered by the Judiciary Board in Grenada." (Id. at ¶ 31.)

On June 5, 2012, Michael Newkrik, the Plaintiff's academic advisor, delivered a letter to Dr. Rao, in which he argued for the reversal of the Plaintiff's dismissal in light of the videotape evidence. Nonetheless, the Plaintiff was dismissed from the medical school.

The Plaintiff asserts that the dismissal violated the medical school's Code of Conduct and Judicial Process Manual, and "additional agreements and promises" made between him and the medical school. (Id. at ¶ 34.) According to the Plaintiff, "[a] s a result of Defendants' arbitrary, capricious, and unlawful actions, Plaintiff has been prevented from attending classes at the University Medical School, thus halting and destroying his ability to attend medical school or to ever enter the medical profession." (Id. at ¶ 35.)

D. Procedural History

As noted above, on April 17, 2014, this Court dismissed a substantially similar lawsuit brought by the Plaintiff for lack of subject matter (diversity) jurisdiction. In the prior action, the Plaintiff sued SGU Ltd., a Grenadian entity that owns and operates the medical school, as well as the current defendants and various deans at the University who are Grenadian citizens.

In an apparent effort to maintain diversity jurisdiction, the Plaintiff has redrafted his complaint to, among other things, exclude any Grenadian entities or individuals as defendants, and commenced this action.

The Plaintiff asserts, as against the St. George Defendants, claims for breach of contract and negligent hiring, training, and supervision and, as against Rosen, claims for tortious interference with contractual and prospective contractual relationships and fraud.

Of relevance here, the sum total of the allegations regarding the St. George Defendants, appearing in the "Parties" section of the complaint, are that SGU LLC, is a limited liability company formed and registered in Delaware; USS LLC is a limited liability company formed and registered in Delaware with a principal place of business in New York, which is registered with the New York Department of State Division of Corporations as an active Foreign Limited Liability Company, and which is affiliated with the medical school, including acting as its agent; the medical school maintains an office in New York State which is operated by USS LLC and which accepts applications for admission, student forms, requests for program information and monetary donations for the School of Medicine; USS LLC engages in student recruitment, advertising, and the creation of website content for the medical school, and the contact information listed on the medical school website includes a Great River, New York address, which is the sole United States address for certain University offices; the medical school promised and confirmed that the Plaintiff's appeal proceedings would be handled in its office in New York.

As previously mentioned, on July 31, 2014, the St. George Defendants moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the complaint against them for failure to state a claim. They argue, among other things, that there is no cognizable basis for suing either entity as opposed to SGU Ltd., as neither is an alter-ego or agent of SGU Ltd.

On August 19, 2014, the Plaintiff filed papers in opposition to the motion to dismiss by the St. George Defendants. In arguing that he has adequately pleaded both his claims against the St. George Defendants, the Plaintiff disclaims any reliance on an alter ego or agency theory of liability. Rather, the Plaintiff conclusorily asserts that the St. George Defendants "are the University." (Docket No. 15, at 8.)

8

On August 28, 2014, Rosen moved pursuant to Fed. R. Civ. P. 12(b)(5) and 12(b)(6) to dismiss the complaint as against her for insufficient service of process and failure to state a claim.

The Court first addresses that branch of Rosen's motion to dismiss for insufficient service of process, as that issue concerns the Court's personal jurisdiction over her.

## II. DISCUSSION

A.  The Legal Standard Under Rule 12(b)(5)

"On a Rule 12(b)(5) motion to dismiss, the plaintiff bears the burden of establishing that service was sufficient." Garnett-Bishop v. New York Cmty. Bancorp, Inc., No. 12-CV-2285 (ADS)(ARL), 2014 WL 5822628, at *9 (E.D.N.Y. Nov. 6, 2014)(Spatt, J.)(citing Khan v. Khan, 360 Fed. App'x 202, 203 (2d Cir. 2010)).  Where, as here,  a court has not conducted a "full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials." Colvin v. State Univ. College at Farmingdale, No. 13–CV–3595 (SJF), 2014 WL 2863224, at *12 (E.D.N.Y. June 19, 2014)(internal quotation marks and citations omitted).  The Court "construe[s] the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor." Id. However, a court "will not draw argumentative inferences in the plaintiff's favor." Tarsavag v. Citic Trust Co., Ltd., 3 F. Supp. 3d 137, 143 (S.D.N.Y. 2014)(internal quotation marks and citations omitted).

"Similar to a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, in considering a motion to dismiss pursuant to 12(b)(5) for insufficient service of process, a Court must look to matters outside the complaint to determine whether it

has jurisdiction." Darden v. DaimlerChrysler N. Am. Holding Corp., 191 F. Supp. 2d at 387 (S.D.N.Y.2002).

To make "a prima facie showing," the plaintiff must aver facts that, "if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." Id. (internal quotation marks and citations omitted).  For instance, a properly filed affidavit of service by a plaintiff is *prima facie* evidence that service was properly effected. Colvin, 2014 WL 2863224 at *14.  However, conclusory statements by a plaintiff are insufficient to "overcome a defendant's sworn affidavit that he was not served." Darden, 191 F.Supp.2d 382 at 387.

Under Fed. R. Civ. P. 4(e), service may be effected on an individual by the following methods:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following:
>
> (A) delivering a copy of the summons and of the complaint to the individual personally;
>
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>
> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e)(1)-(2).

Of relevance here, in New York, CPLR § 308 governs service on natural persons, and provides that service may be made, among other ways, by delivering the summons to a person of suitable age and discretion at the actual place of business, dwelling place, or usual place of abode of the person to be served and by mailing the summons to the person's last known residence or his or her actual place of business. N.Y. CPLR § 308(2).

10

B.  As to Whether the Plaintiff Properly Effected Service on Rosen

Rosen contests as insufficient the affidavit of service of process (Docket No. 18), filed on September 2, 2014 and relied upon by the Plaintiff.

According to this affidavit, which is uncontroverted, on July 15, 2014, the process server delivered a copy of the summons and complaint in this matter to a person of suitable age and discretion by leaving a true copy of each with the community security gatekeeper for the address 71 Northgate Drive, Melville, NY 11747.  The affidavit indicates that the security gatekeeper "confirmed [the] address but refused access per her employer[s'] directions as this is a gated community."  The affidavit also indicates that the process server mailed a copy of the summons and complaint to the above-mentioned address.

Rosen contends that the Plaintiff failed to properly serve her as required by Fed. R. Civ. P. 4 because "upon information and belief, a copy of the summons and complaint was left with the guard at the gatehouse of the Melville condominium community where her parents reside," although she has resided in Brooklyn for the past year. (Docket No. 16, at 16.)

"Service to a guard outside a gated community has been held to be a proper location for service, since the 'outer bounds of defendant's actual dwelling place are deemed to extend to the security booth.'" Stanley Agency, Inc. v. Behind the Bench, Inc., 23 Misc. 3d 1107(A), 885 N.Y.S.2d 713 (Sup. Ct. 2009)(quoting Costine v. St. Vincent's Medical Hospital & Medical Center, 173 A.D.2d 422, 570 N.Y.S.2d 50 (1991)).   Further, "[u]nder New York law, personal delivery of process may be accomplished by leaving the process in the 'general vicinity' of a person to be served who 'resists' service." Single Source Roofing Corp. v. 228 Granite Ave. Realty, LLC, No. 05 CV 1241 (NG)(SMG), 2005 WL 3113421, at *4 (E.D.N.Y. Nov. 22, 2005)(citing Bossuk v. Steinberg, 58 N.Y.2d 916, 918, 447 N.E.2d 56 (1983)); see generally

David D. Siegel, New York Practice § 66 (3d ed.1999). Thus, "if the person to be served interposes a door between himself and the process server, the latter may leave the summons outside the door, provided the person to be served is made aware that he is doing so." Bossuk, 58 N.Y.2d at 918.

In this case, there are at least two possible infirmities with the service of process. First, although the gatekeeper directed the process server to leave the relevant papers outside the guard booth, it is not clear, based on the face of the affidavit of service that the guard keeper expressly refused service and/or knew that the papers were a summons and complaint. Compare Single Source Roofing Corp., 2005 WL 3113421, at *4 (finding service by personal delivery sufficient under CPLR § 308(2) where process server identified himself, person to be served slammed door in process server's face, and process server announced loudly that he was leaving the summons and complaint outside the door)

Second, it is unclear whether the process server could rely on the apparently incorrect representation of the security gatekeeper that Rosen, in fact, resided at 71 Northgate Drive, Melville, NY 11747. On this issue, neither the Plaintiff nor Rosen cites relevant case law.

By way of background, "service pursuant to CPLR § 308[] to the wrong address, even one at which a defendant previously lived, confers no personal jurisdiction over the defendant." Obrycki v. Ryp, 39 Misc. 3d 1220(A), 972 N.Y.S.2d 145 (Sup. Ct. 2013)(citing Community State Bank v. Haakonson, 94 A.D.2d 838 (3rd Dep't 1983)). That Rosen "subsequently received actual notice of the suit does not cure [a] defect, since notice received by means other than those authorized by statute cannot serve to bring a defendant within the jurisdiction of the court." Allianz Ins. Co. v. Otero, No. 01 CIV.2598 (LMM)(HBP), 2003 WL 262335, at *3 (S.D.N.Y. Jan. 30, 2003)(citing Feinstein v. Bergner, 48 N.Y.2d 234, 239, 422 N.Y.S.2d 356, 397 N.E.2d

1161 (1979)). However, these cases are of little assistance to the question whether a party

seeking to effectuate service under CPLR § 308(2) may rely on the representation by a person of

"suitable age and discretion" at a residence that the person sought to be served resides at that

residence.

The Court notes that there is no evidence that the Plaintiff, after receiving notice of

Rosen's challenge to the service of process through her motion to dismiss, has attempted to

ascertain her address in Brooklyn, let alone attempt to effect service on Rosen at this address.

Regardless, the Court need not decide whether the service of process on Rosen complied

with CPLR § 308(2) because, even assuming the Court retains personal jurisdiction over Rosen,

as explained later, the Plaintiff fails to state a claim against her.

As a final note, it is undisputed that the Plaintiff failed to file proof of service within 20

days as required by Fed. R. Civ. P. 4 and CPLR § 308(2). Indeed, the Plaintiff's affidavit of

service was filed on September 2, 2014, more than 20 days after the mailing on July 17, 2014.

"New York courts diverge as to whether the failure to file an affidavit of service with the

court is itself a jurisdictional defect requiring dismissal." Garnett-Bishop v. New York Cmty.

Bancorp, Inc., No. 12-CV-2285 (ADS)(ARL), 2014 WL 5822628, at *11 (E.D.N.Y. Nov. 6,

2014); compare Stop & Shop Supermarket Co. LLC v. Goldsmith, No. 10–CV–3052 (KMK),

2011 WL 1236121, at *4 (S.D.N.Y. Mar. 31, 2011)(holding that "[t]he inescapable implication is

that prior to the filing of proof of service, service under § 308(2) is not 'complete,' and is

therefore not 'proper' within the meaning of § 1441(b)") with Stan Winston Creatures, Inc. v.

Toys "R" Us, Inc., 314 F. Supp. 2d 177, 181 (S.D.N.Y. 2003)("Moreover, both federal and state

courts have found that even the complete 'failure to file proof of service is a mere irregularity,

non jurisdictional in nature, which may be corrected by an order *nunc pro tunc*.'")(italics added)(citation omitted).

Again, however, because the Plaintiff fails to state a claim against Rosen, the Court declines to dismiss the complaint as against her for failure to file proof of service on Rosen.

C.  The Legal Standard Under Rule 12(b)(6)

In deciding Rule 12(b)(6) motions to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); accord Harris v. Mills, 572 F.3d 66, 71–72 (2d Cir. 2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t] headbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; accord Harris, 572 F.3d at 72. Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. Iqbal, 556 U.S. at 679.  Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.; accord Harris, 572 F.3d at 72.

Furthermore, in deciding a motion to dismiss, the Court is confined to "the allegations contained within the four corners of [the] complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998).  This has been interpreted broadly to include any document attached to the Complaint, any statements or documents incorporated in the Complaint by reference, any document on which the Complaint heavily relies, and anything of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted); Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991).

D. The Breach of Contract Claim

"Under New York law, the elements of a cause of action for breach of contract are (1) the existence of a contract, (2) performance of the contract by one party, (3) breach by the other party, and (4) damages suffered as a result of the breach." In re Sona Mobile Holdings Corp., No. 13CV04702 (LTS)(DCF), 2014 WL 5781101, at *5 (S.D.N.Y. Nov. 6, 2014)(quotation marks omitted)(quoting Beautiful Jewellers Private Ltd. v. Tiffany & Co., 438 F. App'x 20, 21–22 (2d Cir. 2011)(citing First Invs. Corp. v. Liberty Mut. Ins. Co., 152 F.3d 162, 168 (2d Cir. 1998)).

Here, the Court finds that the Plaintiff's breach of contract claim against the St. George Defendants fails as a matter of law for the simple reason that he has failed to plead the existence of a contract between him and either of the St. George Defendants. Nor does the Plaintiff plausibly allege a way to attribute SGU Ltd.'s conduct to the St. George Defendants, conclusory assertions notwithstanding. Accordingly, the Court dismisses the breach of contract claim.

E. The Negligent Hiring, Training, and Supervision Claim

"To state a claim for negligent supervision or retention under New York law, in addition to the standard elements of negligence, a plaintiff must show: (1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels." Doe v. City of New York, No. 09 CIV. 9895 (SAS), 2013 WL 796014, at *3 (S.D.N.Y. Mar. 4, 2013)(citations and quotation marks omitted), aff'd, 558 F. App'x 75 (2d Cir. 2014).

As an initial matter, the Court notes that there is no indication that the alleged tortfeasors – certain administrative officials of the medical school – were employed by either of the St

George Defendants, as opposed to by SGU Ltd.  For this reason alone, the Plaintiff's claim for negligent hiring, training, and supervision fails as a matter of law.

However, even assuming these alleged tortfeasors were employed by either of the St. George Defendants, "[u]nder New York law, where an employee acts within the scope of his or her employment, the employer cannot be held liable for a claim of negligent hiring, retention, or training." Barnville v. Mimosa Cafe, No. 1:14-CV-518 (GHW), 2014 WL 3582878, at *2 (S.D.N.Y. July 10, 2014); see Talavera v. Arbit, 18 A.D.3d 738, 795 N.Y.S.2d 708, 708 (2d Dep't 2005)("Generally, where an employee is acting within the scope of his or her employment, the employer is liable for the employee's negligence under a theory of *respondeat superior* and no claim may proceed against the employer for negligent hiring, retention, supervision or training.")(italics added); Weinberg v. Guttman Breast & Diagnostic Inst., 254 A.D.2d 213, 679 N.Y.S.2d 127, 128 (1st Dep't 1998)("[P]laintiff's claims against the [defendant] alleging that it negligently supervised and retained its employees should have been dismissed . . . where, as here, an employee is acting within the scope of his or her employment . . . ."); Gurevich v. City of New York, No. 06 Civ. 1646 (GEL), 2008 WL 113775, at *6 (S.D.N.Y. Jan. 10, 2008)(where defendant conceded employees were acting within scope of employment, "plaintiff's claim for negligent hiring, training, and retention is barred as a matter of law").  "The reason for this rule is that 'if the employee was not negligent, there is no basis for imposing liability on the employer, and if the employee was negligent, the employer must pay the judgment regardless of the reasonableness of the hiring or retention or the adequacy of the training.'" Barnville, 2014 WL 3582878, at *2 (quoting Karoon v. New York City Transit Authority, 241 A.D.2d 323, 659 N.Y.S.2d 27, 29 (1st Dep't 1997).

In this case, while the Plaintiff alleges that Deans Rao, Weitzman, and Robinson had the propensity to engage in illegal conduct and that the underlying illegal conduct by these employees fell "outside the course and scope of their employment." (Compl. at ¶¶ 49-50.), he fails to set forth any facts plausibly supporting this threadbare allegation. In his opposition papers, the Plaintiff submits that Dean "Rao's actions … fall outside the scope of his employment as they were not discretionary and were made with a clear intent to remove Plaintiff from the University." (Docket No. 15.). However, it is not clear how the Plaintiff's disciplinary proceeding could have fallen outside the purview of the duties of the Dean of Student's, which undoubtedly included participating in disciplinary proceedings.

Finally, "[a]lmost every case where a New York court has recognized a negligent retention claim involved significant physical injury to the plaintiff." Kaupp v. Church, No. 10 CIV. 7559 (JFK), 2011 WL 4357492, at *3 (S.D.N.Y. Sept. 19, 2011). Here, while the Plaintiff asserts that he suffered "painful physical injuries" (Compl., at ¶ 51.), he fails to list or describe those injuries nor draw a connection between them and the Plaintiff's dismissal.

Accordingly, the Court dismisses the Plaintiff's claim for negligent hiring, training, and supervision. The Court expresses no opinion as to the propriety of the Plaintiff's dismissal from the medical school.

F. The Request for Punitive Damages Against the St. George Defendants

Even assuming the Plaintiff adequately plead a cause of action against the St. George Defendants, the Court would, as a matter of law, strike the Plaintiff's request for punitive damages against them.

As stated by the New York State Appellate Division, Second Department:

Punitive damages are not recoverable in an ordinary breach of contract case, as their purpose is not to remedy private wrongs but to vindicate public rights.

17

> Punitive damages are only recoverable where the breach of contract also involves a fraud evincing a high degree of moral turpitude, and demonstrating such wanton dishonesty as to imply a criminal indifference to civil obligations, and where the conduct was aimed at the public generally. Moreover, punitive damages are available where the conduct associated with the breach of contract is first actionable as an independent tort for which compensatory damages are ordinarily available, and is sufficiently egregious to warrant the additional imposition of exemplary damages.

Reads Co., LLC v. Katz, 72 A.D.3d 1054, 1056–1057, 900 N.Y.S.2d 131, 133 (2nd Dep't 2010).

Here, the complaint does not allege that the St. George Defendants were involved in any fraud nor does the complaint allege that the dismissal of Ahluwalia was aimed at the public. Accordingly, even if the Plaintiff's adequately plead a cause of action against the St. George Defendants, the Court would strike the Plaintiff's request for punitive damages against them.

G.  Forum Non Conveniens

Having concluded that the Plaintiff does not state a claim for relief against the St. George Defendants, the Court need not address the alternative argument advanced by the St. George Defendants seeking dismissal of the complaint against them under the doctrine of *forum non conveniens.* See Scottish Air Int'l, Inc. v. British Caledonian Grp., PLC, 81 F.3d 1224, 1232 (2d Cir. 1996)("A decision to grant or deny a motion to dismiss a cause of action under the doctrine of *forum non conveniens* lies wholly within the broad discretion of the district court.")(italics added); see generally La Russo v. St. George's Univ. Sch. of Med., 936 F. Supp. 2d 288, 305 n. 13 (S.D.N.Y. 2013) aff'd, 747 F.3d 90 (2d Cir. 2014).

H.  The Claim of Tortious Interference with Contractual and Prospective Contractual
    Relationships against Rosen

Rosen first contends that the Plaintiff's claim for tortious interference with contractual

and prospective contractual relationships is a disguised defamation claim and therefore barred by

the applicable one-year statute of limitations under CPLR § 215(3).  "[T]he two causes of action

can, in certain circumstances, overlap significantly, and a plaintiff's allegations often appear to

satisfy the elements of both torts." Pasqualini v. MortgageIT, Inc., 498 F. Supp. 2d 659, 670

(S.D.N.Y. 2007).

In Pasqualini, the court noted that "New York Courts have consistently ruled that a claim

which is ostensibly based upon the intentional torts of interference with advantageous or

contractual relations, but which alleges injury to reputation, is a disguised defamation claim and

subject to a one-year limitations period under CPLR 215(3)." Id. at 670 (quoting Pedraglio Loli

v. Citibank, Inc., No. 97 Civ. 2179 (LMM), 1997 WL 778750, *4, 1997 U.S. Dist. LEXIS

20070, at *10 (S.D.N.Y. Dec. 18, 1997)(quotation marks omitted).

Here, while the Plaintiff alleges "loss of reputation," he does so only in connection with

his claim of negligent hiring, training, and supervision against the St. George Defendants.

(Compl. at ¶ 51.)  According the Plaintiff all reasonable inferences, the Court construes the claim

of tortious interference against Rosen as not seeking punitive damages arising thereunder.

Turning to the elements of the relevant cause of action, the Court construes "tortious

interference with an existing contract and prospective business relations" as two distinct claims.

See Yong Ki Hong v. KBS Am., Inc., 951 F. Supp. 2d 402, 422 (E.D.N.Y. 2013).

"Under New York law, '[t]o succeed on a cause of action alleging tortious interference

with an existing contract, the plaintiff must establish: (1) the existence of a valid contract

between it and a third party, (2) the defendants' knowledge of that contract, (3) the defendants'

intentional procurement of the third party's breach of that contract without justification, and (4) damages.'" Id. (citing Barns & Farms Realty, LLC v. Novelli, 82 A.D.3d 689, 690, 917 N.Y.S.2d 691, 693 (2d Dep't 2011)(internal quotations omitted)).

With regard to the first element, the contract at issue must be specific, as "conclusory allegations of interference with an unspecified contract are insufficient." Lesesne v. Brimecome, 918 F. Supp. 2d 221, 227 (S.D.N.Y. 2013). As to the second element, "although a defendant need not be aware of all the details of a contract, it must have actual knowledge of the specific contract" that is the subject of the claim. Medtech Products Inc. v. Ranir, LLC, 596 F. Supp. 2d 778, 796 (S.D.N.Y. 2008)(internal quotations omitted). Finally, a plaintiff cannot prevail on a claim of this nature unless he demonstrates an actual breach of the specified contract. See NBT Bancorp Inc. v. Fleet/Norstar Financial Group, Inc., 87 N.Y.2d 614, 620–21, 664 N.E.2d 492, 496, 641 N.Y.S.2d 581, 584 (1996)("Indeed, breach of contract has repeatedly been listed among the elements of a claim for tortious interference with contractual relations.").

In the present case, the Court finds that the Plaintiff fails to adequately plead each of these elements. First, the Plaintiff alleges the "valid and existing contractual relationships with the University" without any specificity. (Compl., at ¶ 54.) Second, the Plaintiff fails to plead that Rosen had actual knowledge of any contract between the Plaintiff and a third party. Finally, as explained previously, the Plaintiff has failed to plead a claim for breach of contract. For these reasons, the Court dismisses the Plaintiff's claim for tortious interference with an existing contract.

The Court reaches a similar conclusion with the respect to the claim of tortious interference with prospective business relations. A claim of this nature requires pleading of "(1) the defendant's knowledge of a business relationship between the plaintiff and a third party; (2)

the defendant's intentional interference with the relationship; (3) that the defendant acted by the use of wrongful means or with the sole purpose of malice; and (4) resulting injury to the business relationship." 534 East 11th Street Housing Dev. Fund Corp. v. Hendrick, 90 A.D.3d 541, 542, 935 N.Y.S.2d 23, 24 (1st Dep't 2011). "[I]t is not necessary that the prospective relation be expected to be reduced to a formal, binding contract." Hannex Corp. v. GMI, Inc., 140 F.3d 194, 205 (2d Cir. 1998)(citing Restatement (Second) of Torts § 766B cmt. c). "Accordingly, the tort encompasses . . . interferences with . . . the opportunity of selling or buying . . . chattels or services, and any other relations leading to potentially profitable contracts." Hannex, 140 F.3d at 205 (internal quotations omitted).

Applying these principles, the Court finds that the Plaintiff's claim of tortious interference with prospective business relations fails as a matter of law because he does not adequately plead that Rosen had actual awareness of the Plaintiff's business relationships with any third party, or that she intentionally sought to interfere with those relationships. Accordingly, the Court dismisses the Plaintiff's claim for tortious interference with prospective business relations.

I.  The Fraud Claim

The elements of common law fraud under New York law are: "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank, 57 F.3d 146, 153 (2d Cir. 1995).

Federal Rule of Civil Procedure 9(b) requires that a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

Of relevance here, the Second Circuit has held that "a plaintiff does not establish the reliance element of fraud for purposes of . . . New York law by showing only that a third party relied on a defendant's false statements." Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Legal Servs. Fund & Annuity Fund v. Lollo, 148 F.3d 194, 196 (2d Cir. 1998); see also City of New York v. Smokes–Spirits.com, Inc., 541 F.3d 425, 454 (2d Cir. 2008) ("[A]llegations of third-party reliance, however, are insufficient to make out a common law fraud claim under New York law."), rev'd on other grounds and remanded sub nom. Hemi Grp., LLC v. City of New York, N.Y., 559 U.S. 1, 130 S. Ct. 983175 L. Ed. 2d 943 (2010). Instead, a plaintiff asserting a fraud claim must "plead 'reasonable reliance on the part of the plaintiff.'" Smokes–Spirits.com, 541 F.3d at 454 (quoting Crigger v. Fahnestock & Co., Inc., 443 F.3d 230, 234 (2d Cir. 2006))

"Despite the Second Circuit's holdings in Lollo and Smokes–Spirits.com, the current state of New York law regarding the viability of a fraud claim premised on third-party reliance is not entirely clear." Pasternack v. Lab. Corp. of Am., No. 10 CIV. 4426 (PGG), 2014 WL 4832299, at *15 (S.D.N.Y. Sept. 29, 2014); compare Siotkas v. LabOne, Inc., 594 F. Supp. 2d 259, 275–76 (E.D.N.Y. 2009)(dismissing fraud claims by airline employees — who were accused of substituting their urine specimens — against a drug testing laboratory, where the laboratory's alleged misrepresentations were made to plaintiffs' employer, but plaintiffs themselves "in no way relied on [the laboratory's] reports"), Fed. Treasury Enter. Soiuzplodoimport v. Spirits Int'l N.V., 425 F. Supp. 2d 458, 473 (S.D.N.Y. 2006)("A claim for fraud cannot lie under New York law where the alleged misrepresentation is made to and relied upon by a third party, but not the plaintiff."), vacated in part on other grounds, 623 F.3d 61 (2d Cir. 2010) and aff'd, 400 F. App'x 611 (2d Cir. 2010); Trepel v. Dippold, No. 04 Civ. 8310

(DLC), 2006 WL 3054336, at *5 (S.D.N.Y. Oct. 27, 2006)(quoting Lollo, 148 F.3d at 196)("In order to establish fraud based on misrepresentations directed at a third party, however, plaintiff must 'establish that he relied upon it to his detriment, and that the defendants intended the misrepresentation to be conveyed to him.'"), Morris v. Castle Rock Entm't, Inc., 246 F. Supp. 2d 290, 296 (S.D.N.Y. 2003)( "[T]hird-party reliance is not enough to sustain a claim for common law fraud.") and Falise v. Am. Tobacco Co., 94 F. Supp. 2d 316, 354 (E.D.N.Y. 2000)("As a general proposition, New York requires the party seeking recovery for an action sounding in common-law fraud to establish that he was misled, rather than merely alleging that the misrepresentations and omissions in question were relied on by a third party.") with My First Shades v. Baby Blanket Suncare, 914 F. Supp. 2d 339, 352 (E.D.N.Y. 2012)("While Mercer is correct that Plaintiffs never pled their own reliance on misrepresentations, New York allows plaintiffs to bring claims based on a theory of third party reliance."), Prestige Builder & Mgmt. LLC, 896 F. Supp. 2d at 204–05 ("[T]he third-party reliance doctrine is good law in New York...."), Chevron Corp., 871 F. Supp. 2d at 256–57 (concluding that New York law allows for "recovery for common law fraud based on third party reliance"), N.B. Garments (PVT), Ltd., 2004 WL 444555, at *3 (holding that a fraud claim premised on third-party reliance "raises a cognizable claim under New York law"), and Hyosung Am., Inc. v. Sumagh Textile Co., Ltd., 25 F. Supp. 2d 376, 383–84 (S.D.N.Y. 1998)(citing Buxton Mfg. Co. v. Valiant Moving & Storage, Inc., 239 A.D.2d 452, 453–54, 657 N.Y.S.2d 450 (2d Dep't 1997)); Desser v. Schatz, 182 A.D.2d 478, 479–80, 581 N.Y.S.2d 796 (1st Dep't 1992)("[A] plaintiff may state a claim for fraud where a defendant's misrepresentation caused a third party to extinguish its financial obligation to the plaintiff.").

As described above, several courts in this circuit have allowed fraud claims premised on third-party reliance to proceed, even after the Second Circuit's decisions in <u>Lollo</u> and <u>Smokes–Spirits.com</u>. These courts have pointed to three New York Court of Appeals cases from the late 1800s, namely <u>Eaton, Cole & Burnham Co. v. Avery</u>, 83 N.Y. 31 (1880), <u>Rice v. Manley</u>, 66 N.Y. 82 (1876), and <u>Bruff v. Mali</u>, 36 N.Y. 200 (1867), as standing for the proposition that a third party's reliance is sufficient to state a claim for fraud under New York law. <u>See</u> <u>Chevron Corp.</u>, 871 F. Supp. 2d at 256–57 (quoting <u>Levesque v. Kelly Commc'ns, Inc.</u>, No. 91 Civ. 7045 (CSH), 1993 WL 22113, at *6 (S.D.N.Y. Jan. 25, 1993))("While these [New York Court of Appeals] cases were decided in the last century, they have not been overruled, and this Court is bound to 'defer to the voice of th[e] state's highest court — however antiquated its view of the law may seem.' . . . [T]his Court concludes that the New York Court of Appeals' previous decisions allowing recovery for common law fraud based on third party reliance remain authoritative . . .'"); <u>see also</u> <u>Prestige Builder & Mgmt. LLC</u>, 896 F. Supp. 2d at 203; <u>N.B. Garments (TVT), Ltd.</u>, 2004 WL 444555, at *3. Several New York Appellate Division decisions have likewise relied on these Court of Appeals decisions in sustaining fraud claims based on third-party reliance. <u>See</u> <u>Buxton</u>, 239 A.D.2d at 453–54; <u>Desser</u>, 182 A.D.2d at 479–80.

However, here, the Court finds that the Plaintiff may not rely of the three New York Court of Appeals cases – <u>Eaton</u>, <u>Buff</u>, and <u>Rice</u> – to salvage his fraud claim against Rosen. In <u>Pasternack</u>, United States District Judge Paul G. Gardephe distinguished these cases:

> In <u>Eaton</u> and <u>Bruff</u>, the Court of Appeals addressed the question of whether a defendant could be held liable for misrepresentations made to a third party, which were then communicated by the third party to the plaintiff. In both cases, the defendant intended for the misrepresentations to be communicated to the plaintiff, knowing that the plaintiff would rely on those misrepresentations and thereby suffer injury. In <u>Eaton</u>, the defendant made false statements about his firm's financial condition to a mercantile agency. <u>Eaton</u>, 83 N.Y. at 33. The agency communicated this information to the plaintiff, who - relying upon it - sold goods

to the defendant on credit. The defendant did not pay for the goods, however, and plaintiff sued to recover their cost. Id. The court held that "if A. makes [a false] statement to B. for the purpose of being communicated to C.[,] or intending that it shall reach and influence him, [A.] can be . . . held [liable to C.]." Id. at 35. Similarly, in Bruff. the defendants - officers of a company - issued stock certificates that they knew to be valueless, and a third party company sold the certificates to plaintiff. Bruff, 36 N.Y. at 200–02. The defendants argued that they could not be held liable to the plaintiff for misrepresentations regarding the value of the stock, because the stock certificates had been sold to the plaintiff by a third party. Id. at 204. The court rejected this argument, holding that "the defendants, having issued the false certificates of stock, authenticated by them as genuine, and cast them upon the market with fraudulent intent, [were] liable to every holder to whose hands they may come by fair purchase." Id. at 206.

In sum, neither Eaton nor Bruff addresses the issue of third-party reliance. In each case, it was the plaintiff who relied on the defendant's misrepresentations to his detriment. The third party merely served as a conduit for the misrepresentations to be relayed from the defendant to the plaintiff, so that the plaintiff would be induced to act on them. These cases are therefore not on point.

Third-party reliance was also not at issue in Rice. In Rice, "plaintiffs had made an agreement with one Stebbins to purchase from him a large quantity of cheese, to be delivered at a future day." Rice, 66 N.Y. at 83. Defendant - pretending to be plaintiffs - cancelled the order, so that he could buy the cheese for himself. Id. at 84. The agreement between plaintiffs and Stebbins was not legally enforceable- because it did not comply with the statute of frauds — but the court found that Stebbins would have sold the cheese to plaintiffs but for defendant's misrepresentations. Id. at 83–84. The question that the court addressed was whether plaintiffs had suffered a legally cognizable injury given that plaintiffs and Stebbins had not entered into an enforceable contract. Id. at 84–85. The Court of Appeals held that plaintiffs could recover from defendant, because plaintiffs had in fact been injured by defendant's misrepresentations, given that Stebbins would have sold plaintiffs the cheese but for defendant's misrepresentations. Id.

It is true that the Rice court characterizes plaintiffs' cause of action as a fraud claim. The opinion also contains the following language, which several courts have read to suggest that third party reliance is sufficient to state a fraud claim: "The mere forms adopted for the perpetration of frauds are of little importance; it matters not whether the false representations be made to the party injured or to a third party, whose conduct is thus influenced to produce the injury, or whether it be direct or indirect in its consequences." Id. at 87.

The issue before the Rice court, however, was whether plaintiffs had suffered a legally cognizable injury, and not whether a fraud claim could be premised on misrepresentations made to a third party. Moreover, it must be acknowledged that the discussion of fraud in Rice reflects an antiquated and simplistic view of the

elements of a fraud claim that has long since been superseded. For example, the
<u>Rice</u> court states that only two elements must be pled to state a fraud claim: fraud
and damage. <u>See id.</u> at 84 ("when these two [-fraud and damage-] concur[,] an
action lies"). More modern cases make clear that the tort is not so simply stated.
<u>See, e.g.</u>, <u>Eurycleia Partners, LP v. Seward & Kissel, LLP</u>, 12 N .Y.3d 553, 559
(N.Y. 2009)("The elements of a cause of action for fraud require a material
misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance,
justifiable reliance by the plaintiff and damages.'"). To read <u>Rice</u> as articulating a
rule for the reliance element of a modern fraud claim - when that case contains no
discussion of reliance and turns on the issue of whether plaintiffs have suffered a
legally cognizable injury - appears ill-advised.

2014 WL 4832299, at *17-18.

The Court finds to be persuasive the thorough reasoning of <u>Pasternack</u>. Accordingly, the

Court adopts the interpretation of New York law set forth in <u>Lollo</u> and <u>Smokes-Spirits.com</u>.

That interpretation hold that "a plaintiff does not establish the reliance element of fraud for

purposes of . . . New York law by showing only that a third party relied on a defendant's false

statements." <u>Lollo</u>, 148 F.3d at 196.

Here, the complaint alleges that only the medical school and its employees, rather than

the Plaintiff, relied upon the representations of Rosen. Therefore, the Court dismisses the

Plaintiff's fraud claim.

The Court declines to address whether the Plaintiff's cause of action for fraud is, in fact,

an attempt to circumvent the one-year statute of limitation period applicable to defamation

claims. The Court also declines to address Rosen's alternative argument seeking to strike the

Plaintiff's request for punitive damages against her.

I.   <u>Whether the Court Should Grant the Plaintiff Leave to Replead?</u>

Under Fed. R. Civ. P. 15(a), leave to replead should be freely given. However, the Court

declines to do so in this case because the Plaintiff has "requested leave to amend without any

suggestion of what changes such amendment might effect" or how such changes might rescue

26

the complaint. In re SAIC Inc. Derivative Litig., 948 F. Supp. 2d 366, 392 (S.D.N.Y. 2013), aff'd

sub nom. Welch v. Havenstein, 553 Fed. Appx. 54 (2d Cir. 2014); see also In re Goldman Sachs

Mortgage Servicing S'holder Derivative Litig., —— F. Supp. 2d ——, ——, No. 11 Civ. 4544

(WHP), 2012 WL 3293506, at *11 (S.D.N.Y. Aug. 14, 2012)("Here, Plaintiffs failed to advise

this Court of how an amendment would cure defects in the Complaint"). In other words, a

review of the Plaintiff's opposition papers reveals no additional facts or theories that would be

raised in an amended complaint.

"As a result, the Court has 'no inkling of what [the] amendment might look like or what

additional facts may entitle [the Plaintiff] to relief.'" 545 Halsey Lane Properties, LLC v. Town

of Southampton, No. 14-CV-2368 (ADS) (GRB), 2014 WL 4629087, at *8 (E.D.N.Y. Sept. 16,

2014)(Spatt, J)(quoting St. Clair Shores Gen. Employees Ret. Sys. v. Eibeler, 745 F. Supp. 2d

303, 316 (S.D.N.Y. 2010)). "Rule 15(a) is not a shield against dismissal to be invoked as either a

makeweight or a fallback position in response to a dispositive motion." DeBlasio v. Merrill

Lynch & Co., Inc., No. 07 Civ. 0318 (RJS), 2009 WL 2242605, at *41 (S.D.N.Y. July 27, 2009).

For this reason, the Court exercises its discretion to deny the Plaintiff's alternative

request for leave to replead.

### III. CONCLUSION

Based on the foregoing, the Court grants the Defendants' motions to dismiss the

complaint. The Plaintiff's alternative request for leave to replead is denied.

The Clerk of the Court is respectfully directed to close the case.

**SO ORDERED**
Dated: Central Islip, New York
November 25, 2014

_Arthur D. Spatt_
ARTHUR D. SPATT
United States District Judge